UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN DEMETRIS BRAGG ROSS,
#418024,

        Plaintiff,

v.

UNKNOWN MILLER, et al.,

        Defendants.
_____/

Case No. 2:22-cv-94

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for partial summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 33.)

Plaintiff — state prisoner Shawn Demetris Bragg Ross — filed suit pursuant to 42 U.S.C. § 1983 on May 11, 2022. (ECF No. 1.) In his verified amended complaint, Ross alleged that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Corrections Officer (CO) Miller, Lieutenant (Lt.) Watson, Sergeant (Sgt.) Montie, and Registered Nurse (RN) Duncan violated his rights under the United States Constitution and the Michigan Constitution. (ECF No. 18, PageID.119-120.) More specifically, Ross alleged that on March 8, 2021, Defendants Miller, Watson, and Montie called him to the officer's desk in URF's chow hall. (ECF No. 18, PageID.117.) Miller allegedly told Ross that he did not like Ross

because of all of Ross's recent complaints against staff, and that he could not wait to tase Ross the first chance he got. Ten to fifteen minutes later, a fight broke out in the chow hall, and despite the fact that Ross was not involved, Miller tased him. (*Id.*) Watson then pulled the taser probes from Ross's back instead of allowing health care to evaluate and properly remove the probes. Miller, Watson, and Montie allegedly told Ross that if he continued filing grievances, getting tased would only be the beginning of his problems. (*Id.*, PageID.118.) After Ross was tased, he was seen by RN Duncan, who did nothing to address Ross's complaints of pain, disorientation, or blurred vision. Instead, Duncan allegedly asked Watson whether Watson wanted Ross to receive treatment, and then told Ross that he does not treat inmates who like to file grievances. (*Id.*)

Defendants now move for partial summary judgment, asserting that Ross failed to exhaust his administrative remedies with respect to his claims against Watson, Montie, and Duncan, and his retaliation claim against Miller prior to filing suit. (ECF No. 33, PageID.177.) Defendants say that Ross filed three grievances through Step III of the Michigan Department of Corrections (MDOC) grievance process. (ECF No. 34, PageID.184.) But none of those grievances name Watson, Montie, or Duncan. (*Id.*, PageID.192.) And the only grievance against Miller for tasing Ross fails to allege any kind of retaliatory motive. (*Id.*)

In response to Defendants' motion, Ross asserts that the grievance process was unavailable to him with respect to his retaliation, failure to protect, and deliberate indifference claims. (ECF No. 48, PageID.262-263.) More specifically, Ross says that

2

staff thwarted his attempts to pursue relevant grievances through Step III of the grievance process. (*Id.*, PageID.48-1, PageID.267.) Ross asserts that he has been "continuously threatened and intimidated by prison staff for filing grievances." (*Id.*)

The undersigned respectfully recommends that the Court grant Defendants' motion for partial summary judgment. Although Ross alleges that URF staff rendered the grievance process unavailable to him via threats and intimidation, Ross's grievance records demonstrate that the grievance process was available to him — Ross was not actually deterred from utilizing the grievance process. And those grievance records further demonstrate that the only claim that Ross properly pursued through Step III of the MDOC grievance process was his Eighth Amendment claim against Defendant Miller. Accordingly, it is the undersigned's opinion that Defendants are entitled to summary judgment as to Ross's § 1983 claims against Defendants Watson, Montie, and Duncan, and Ross's retaliation claim against Defendant Miller. Because the undersigned recommends the dismissal of all federal claims against Defendants Watson, Montie, and Duncan, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Ross's state claims against Watson, Montie, and Duncan, and dismiss them from this case.

## II.   Relevant Procedural History

In his initial complaint, Ross alleged that while he was eating dinner in URF's East Food Service Chow Hall on March 8, 2021, a fight broke out between two other prisoners. (ECF No. 1, PageID.6.) Despite the fact that Ross was not involved in the fight, he was tased by CO Miller. (*Id.*, PageID.7.) CO Miller, Lt. Watson, and Sgt.

3

Montie then refused to provide Ross with the critical incident report related to the tasing, in an effort to cover for CO Miller's conduct. (*Id.*) In his initial complaint, Ross reported that he had exhausted his claims via Grievance Identifier <u>URF-2021-03-0705-26A</u>, which was denied at all three steps. (*Id.*, PageID.4.)

On August 8, 2022, this Court dismissed Ross's complaint for failure to state a claim in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), explaining that "Plaintiff was not the intended object of the force used, but was merely a victim of being in the wrong place at the wrong time" and that "allegations of negligence fall short of deliberate indifference." (ECF No. 14, PageID.80-81 (Opinion); *see also* ECF No. 15, PageID.85 (Judgment).) Ross then moved to amend his complaint. (ECF No. 26 (Motion to Amend).) The Court granted Ross's motion (ECF No. 17, PageID.112) and later determined that Ross's amended complaint stated claims of Eighth Amendment excessive force (Miller), Eighth Amendment failure to protect (Watson and Montie), Eighth Amendment deliberate indifference to serious medical needs (Watson and Duncan), and First Amendment retaliation (Miller, Watson, Montie, and Duncan). (ECF No. 19, PageID.127-132, 135.) And the Court retained supplemental jurisdiction over Ross's state law claims. (*Id.*, PageID.134-135.)

### III. Defendants' Summary Judgment Motion

#### a. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

4

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**b. Exhaustion**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

5

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers

are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is

7

unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

8

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation

9

> process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### c. Analysis

Defendants first contend that Ross did not exhaust his § 1983 claims against Defendants Watson, Montie, or Duncan because Ross did not pursue any grievances against them. Further, Defendants contend that Ross did not exhaust his retaliation claim against Defendant Miller because his grievance against Miller did not assert retaliation.

A review of Ross's Step III Grievance Report demonstrates that Ross pursued three grievances through Step III of the grievance process between March 11, 2021, and December 12, 2022. (ECF No. 34-3, PageID.207.) The attached grievances demonstrate that of the three grievances, none named Defendants Watson, Montie, or Duncan at Step I. (*Id.*, PageID.208-222.) And only one named Defendant Miller at Step I: Grievance Identifier URF-2021-03-0705-26A.

At Step I, Grievance Identifier URF-2021-03-0705-26A reads:

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

> Due to Officer Miller not having a confident clear shot, I Ross [sic] was tazed on 3-8-21 around 5:00 pm eastside chow hall during "014" At no time was I a threat or a part of this "014." I was sitting down eating my meal. The Officer came off his hip without a clear shot. This is a serious manner. My left side of my body still has no feeling and my left eye is blurry. This Officer with his poor decision to shoot with no knowledge to where the red infered [sic] beam is was [sic] careless and due to his lack of patience, I Ross is [sic] suffering from his action. By me making this manner known, I'm scard [sic] of retaliation from co workers or Officer Miller. I feel this Officer should not be able to use a taser or should be able to protect due to his poor judgment. Please take heed to this manner [sic].

(*Id.*, PageID.221.)

In responding to the Step I grievance, Sgt. Montie indicated that Ross signed off on the grievance, rendering it completed. (*Id.*, PageID.222.) But Ross filed a Step II grievance appeal indicating that the grievance was not resolved or completed at Step I. (*Id.*, PageID.219.) When that appeal was denied, Ross filed a Step III grievance appeal, which reads:

> I am requesting a full investigation into this, Eight Amendment, Constitutional rights violation on Officer Miller, 2nd/shift, Step #1 grievance Step #2 grievance inside, showing Officer Miller [w]rongdoing on 3-8-2021, on me being [w]rongfully tazed, and Lt. Watson, and Sgt. Motie [sic], lieing [sic] and covering-up [w]rongdoing, false reports, I am requesting all 3 be fired.

(*Id.*, PageID.219.)

As an initial matter, the undersigned notes that Defendants do not contest the exhaustion of Ross's Eighth Amendment claim against Defendant Miller. Indeed, that claim appears to have been exhausted via Grievance Identifier <u>URF-2021-03-0705-26A</u>. But Defendants argue that Grievance Identifier <u>URF-2021-03-0705-26A</u> did not exhaust any claims against Watson, Montie, or Duncan, and that it did not

11

exhaust any retaliation claims either. (ECF No. 34, PageID.192.) The undersigned agrees.

In Step I to Grievance Identifier <u>URF-2021-03-0705-26A</u>, Ross complains that Defendant Miller was careless in deploying a taser, causing the taser probes to hit Ross. Ross also reports that he fears retaliation for filing the Step I grievance. But Ross does not assert that Defendant Miller tased him in retaliation for prior protected conduct. And although Ross names Defendants Watson and Montie in his Step III grievance, he does not allege that they retaliated against him. Even if he had, raising new claims at Step III of the grievance process does not serve to properly exhaust those claims. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."), *abrogated on other grounds by Jones*, 549 U.S. 199.

It is worth noting that in another Step I grievance that was appealed through Step III of the grievance process, Grievance Identifier <u>URF-21-06-1474-28c</u>, Ross states the following:

> This is against the URF Warden for a violation of the Special Prisoner Offender Notice (SPON) Policy. I was not involved in a fight that c/o Miller shot me with a taser for, I wasn't even in the immediate area of the fight, and a Sgt. untrained in healthcare snatched the taser prongs

12

> out of my back causing major nerve damage. At this time, a separate grievance has been filed on the incident, this is NOT a duplicate issue due to this being the result of assigning me to a detail/work assignment affording the officers involved direct access to me physically. I react involuntarily upon the sight of the officers, I tense up, bowels contract, and I'm always on edge around them in anticipation of a set up, false accusation, or misconduct fabrication attributed to retaliation. Investigation of the situation warrants a SPON.

(ECF No. 34-3, PageID.216.) The undersigned acknowledges that this grievance references Defendant Watson's alleged improper removal of the taser prongs from Ross's back. But Ross does not name Watson, or any other Defendant, in the grievance, as required by MDOC policy. MDOC P.D. 03.02.130 at ¶ S (requiring inmates filing Step I grievances to include "[d]ates, times, places and names of all those involved in the issue being grieved"). And the grievance was rejected at all three steps of the grievance process; it was not considered and addressed on its merits. As such, Grievance Identifier URF-21-06-1474-28c did not serve to exhaust any of Ross's claims. *Cf. Mattox*, 851 F.3d at 590-91 (explaining that "prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits").

For these reasons, the undersigned agrees with Defendants' evaluation of Ross's Step III Grievance Report: Ross did not exhaust his retaliation claim against Miller nor any of his § 1983 claims against Watson, Montie, or Duncan through the grievance process prior to filing suit. But the inquiry does not end there because Ross asserts that URF employees rendered the grievance process unavailable to him. Because defendants bear the burden of pleading and proving a plaintiff's failure to exhaust, "if the plaintiff contends that he was prevented from exhausting his

13

remedies," the defendants must "present evidence showing that the plaintiff's ability to exhaust was not hindered." *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)).

Here, Defendants point to Ross's Grievance Summary Report and Step III Grievance Report as evidence that Ross was not thwarted from filing grievances. (ECF No. 49, PageID.296-297.)  As discussed above, Ross's Step III Grievance report reflects that Ross filed two Step I grievances related to his claims against Defendants that he ultimately pursued through Step III of the grievance process: one on March 11, 2021 (Grievance Identifier URF-2021-03-0705-26A), and another on June 2, 2021 (Grievance Identifier URF-21-06-1474-28c).  Ross's Grievance Summary Report further reveals that Ross filed two Step I grievances related to his claims against Defendants that he did not pursue through Step III of the grievance process: one on June 3, 2021 (Grievance Identifier URF-21-06-1518-28A), and another on June 6, 2021 (Grievance Identifier URF-21-06-1554-28B).  (ECF No. 49-2, PageID.309, 312.)

Grievance Identifier URF-21-06-1518-28A reads:

> This is against c/o Grove for a violation of prisoner/parolee grievance process that harassment has sustained.  I have previously filed a grievance against c/o Miller for intentionally, harmfully, and maliciously tasing me during a fight that I wasn't even a participant in. I shouldn't even be working around c/o Miller in the kitchen per SPON policy, for room to be reserved for him to utilize c/o Grove as a retaliatory conduit.  Prisoner/parolee grievance policy states that if a prisoner files a grievance, he/she shall not be subject to penalty for the filing of that grievance—yet in case there is an appearance of reprisal, the prisoner may file a(nother) grievance.

(*Id.*, PageID.312.)

14

> Grievance Identifier URF-21-06-1554-28B reads:
>
> This is against Sgt. G. Blemke for a violation of prisoner/parolee grievance process that harassment has sustained. I have filed grievances on Officers Miller/ Sgt. Motie/ Lt. Watson, I should not have been working around this officers [sic] per SPON policy for room to be reserved for them to use or utilize Sgt. Blemke as a retaliatory conduit. Refer to prior grievances.

(*Id.*, PageID.309.)

As the undersigned has previously noted, "the undersigned reads *Ross* to require that the intimidation must actually cause the complainant to forgo filing a grievance. If the complainant is not too intimidated to file a grievance, then the grievance system is still available to him or her." *Sango v. Eubanks*, No. 2:20-CV-00160, 2021 WL 2942490, at *5 (W.D. Mich. May 3, 2021), *R. & R. adopted*, No. 2:20-CV-160, 2021 WL 2217372 (W.D. Mich. June 2, 2021), *aff'd sub nom. Sango v. Fleury*, No. 21-2597, 2022 WL 2163519 (6th Cir. May 4, 2022); *see also Kitchen v. Laroux*, No. 2:23-CV-94, 2023 WL 9118798, at *6 (W.D. Mich. Dec. 6, 2023) (recommending that the Court grant summary judgment based on the plaintiff's failure to exhaust where the plaintiff claimed that staff intimidation rendered the grievance process unavailable, but the plaintiff's grievance summary report revealed that he had filed numerous grievances during the relevant timeframe), *R. & R. adopted*, No. 2:23-CV-94, 2024 WL 81276 (W.D. Mich. Jan. 7, 2024).

Ross's grievance records reveal that after the March 8, 2021, incident, he filed four Step I grievances related to his claims against Defendants and pursued two of them through Step III of the grievance process. (ECF No. 49-2, PageID.301; ECF No. 34-3, PageID.207.) And Ross filed another three unrelated Step I grievances. (ECF

15

No. 49-2, PageID.301.) As such, it is the undersigned's opinion that Defendants have met their burden of establishing that there are no genuine issues of material fact, that the grievance process was available to Ross, and that Ross failed to exhaust any of his claims against Defendants Watson, Montie, and Duncan as well as his retaliation claim against Defendant Miller.

### IV.  Supplemental Jurisdiction

This Court previously decided to exercise supplemental jurisdiction over Ross's state law claims against Defendants. (ECF No. 19, PageID.134.) However, the Court noted that "[o]rdinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims." (*Id.* (first citing *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007); and then citing *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993)).

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182. The ultimate decision is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

If the Court adopts the undersigned's recommendation, it will dismiss all of Ross's federal claims against Defendants Watson, Montie, and Duncan. Only Ross's retaliation claim against Defendant Miller will remain. As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over Ross's state law claims against Defendants Watson, Montie, and Duncan, but continue to exercise supplemental jurisdiction over Ross's state law claims against Defendant Miller.

## V.     Recommendation

The undersigned respectfully recommends that the Court grant Defendants motion for partial summary judgment (ECF No. 33). Although Ross alleges that URF staff rendered the grievance process unavailable to him via threats and intimidation, Ross's grievance records demonstrate that the grievance process was available to him — he was not actually deterred from utilizing the grievance process. And those grievance records further demonstrate that the only claim that Ross properly pursued through Step III of the MDOC grievance process was his Eighth Amendment claim against Defendant Miller. Accordingly, it is the undersigned's opinion that Defendants are entitled to summary judgment as to Ross's § 1983 claims against Defendants Watson, Montie, and Duncan, and Ross's retaliation claim against Defendant Miller. Because the undersigned recommends the dismissal of all federal claims against Defendants Watson, Montie, and Duncan, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Ross's state claims against Watson, Montie, and Duncan.

If the Court accepts this recommendation, Ross's Eighth Amendment claim of excessive force and state law claims against Defendant Miller will remain.

Dated:   September 3, 2024                    /s/ *Maarten Vermaat*
                                                                             MAARTEN VERMAAT
                                                                             U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).