UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN DEMETRIS                                          Case No. 2:22-cv-94
BRAGG ROSS #418024,

        Plaintiff,                                  Hon. Jane M. Beckering
                                                        U.S. District Judge

    v.

UNKNOWN MILLER, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses a motion for summary judgment filed by the sole remaining Defendant – acting Sergeant (Sgt.) Miller. (ECF No. 61.)   The Plaintiff did not respond.[1]

Plaintiff — state prisoner Shawn Demetris Bragg Ross — filed suit pursuant to 42 U.S.C. § 1983 on May 11, 2022.   (ECF No. 1.)   In his verified amended complaint, Ross alleged that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Sgt. Miller, Lieutenant (Lt.) Watson, Sgt.

---

[1]     When prisoner *pro se* litigants fail to respond to summary judgment motions, the Sixth Circuit holds that prisoners should be provided notice of the consequences of the motion before the district court grants the motion. *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003).   This R. & R. should serve as such a notice and Ross will have an opportunity to object to it with 14 days of it being served to him. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

1

Montie, and Registered Nurse (RN) Duncan violated his rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution and violated his rights under the Michigan Constitution.   (ECF No. 18, PageID.119−20.)

On December 1, 2022, the Court issued a screening opinion.   (ECF No. 19.) In the opinion, the Court dismissed Ross's Fourth and Fourteenth Amendment substantive due process claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).   (*Id.*, PageID.135.)   Ross's First Amendment retaliation claims, Eighth Amendment claims, and his state law claims remained in the case.   (*Id.*)

On March 7, 2024, the Defendants moved for summary judgment on the basis of exhaustion.   (ECF No. 33.)   On September 3, 2024, the undersigned issued an R. & R. recommending that the Court dismiss all claims except the following: Ross's Eighth Amendment claim of excessive force and state law claims against Sgt. Miller. (*Id.*, PageID.344.)   United States District Court Judge Jane M. Beckering approved and adopted the R. & R. on October 10, 2024.   (ECF No. 51.)

On January 30, 2025, Defendant Miller filed a motion for summary judgment. (ECF No. 61.)   Miller asserts that Ross can satisfy neither the objective nor the subjective components of his Eighth Amendment excessive force claim.   (*Id.*, PageID.399.)   Miller also asserts that because he did not violate Ross's Eighth Amendment rights, he is entitled to qualified immunity.   (*Id.*, PageID.402.) Additionally, Miller states that he is entitled to sovereign immunity, should Ross's

2

*pro se* amended complaint be construed as a suit against Miller in his official capacity. (*Id.*, PageID.405.)

In the opinion of the undersigned, no genuine issue of material fact exists as to Ross's Eighth Amendment excessive force claim against Sgt. Miller.   Thus, Miller is entitled to judgment in his favor pursuant to Fed. R. Civ. P. 56.   It is respectfully recommended that the Court grant the Defendant's motion for summary judgment and dismiss the case.   The undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over Ross's state law claims to the extent that any remain in the case and dismiss them without prejudice.

## II.   Factual Allegations

Ross's allegations against Defendant Miller were set forth in this Court's December 1, 2022 screening opinion.   (ECF No. 19.)   There, the Court provides in pertinent part:

> Plaintiff alleges that on March 8, 2021, as he was entering the chow hall, he was called to the officer's desk by Defendants Miller, Watson, and Montie and was told he needed to stop filing grievances or he would regret it. While Defendants Watson and Montie were present, Defendant Miller told Plaintiff that he could not wait to tase Plaintiff and inflict the kind of pain that Plaintiff was causing his co-workers with grievances and complaints. Plaintiff asked Defendants Watson and Montie if they were going to let Defendant Miller threaten him, and they stated that they would support their officers regardless of the actions they took.
>
> Plaintiff went and got his tray, and sat down and began to eat. While Plaintiff was eating, a fight broke out between two inmates on the other side of the chow hall, some distance away from Plaintiff. The fight was immediately contained by other officers in the chow hall. However, despite the fact that the fight had been contained, Defendant Miller came up behind Plaintiff and tased him in the back while he was eating. Plaintiff lost consciousness and his muscles locked up while Defendant

3

Miller continued to tase him. When Defendant Miller stopped squeezing the taser, Defendant Watson pulled the taser prongs from Plaintiff's back, which violated protocol and policy because the prongs are supposed to be removed by a health care professional who can ensure that no further damage occurs.

After the incident, Defendants Miller, Watson, and Montie told Plaintiff that his being tased was just the beginning of his problems and if he continued to write grievances, the remainder of his time at URF would be "hell." (ECF No. 18, PageID.118.) Defendants said that if Plaintiff wrote another grievance or complaint, they would take Plaintiff to the hole and would not let him out unless he promised not to file any further grievances. Defendant Watson and Montie stated that they had been killing inmates at URF for a long time and that no one could do anything to them. Then Defendants Watson and Montie threatened to take Plaintiff immediately to the hole and keep him there unless he promised never to file another grievance. Plaintiff complied in order to get medical attention for his injuries.

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.    Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).    The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986)).    The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).  The undersigned recognizes that *pro se* pleadings are to be liberally construed.  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

## IV.  Eighth Amendment Excessive Force

Ross asserts that Sgt. Miller used excessive force in violation of the Eighth Amendment when Miller "came up behind" him and tased him in the back on March 8, 2021.  (ECF No. 18, PageID.117.)  Sgt. Miller asserts that Ross cannot maintain his Eighth Amendment excessive force claim because Miller's use of force was necessary to regain control of fighting prisoners and protect the safety of individuals in their vicinity, the use of force did not offend contemporary standards of decency, and Sgt. Miller did not act maliciously.  (ECF No. 62, PageID.396–99.)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."

*Rhodes*, 452 U.S. at 346.   Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."   *Id.*   To establish an Eighth Amendment claim, a plaintiff must satisfy both a subjective and an objective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).

First, "[t]he subjective component focuses on the state of mind of the prison officials."   *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298).   Courts must ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).   In making this inquiry, courts are guided by "factors [such] as the need for application of force, the relationship between the need and the amount of force that was used [and] the extent of injury inflicted." *Whitley v. Albers,* 475 U.S. 312, 320−21 (1986).

Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'"   *Williams*, 631 F.3d at 383.   The objective component is contextual and therefore varies depending on the claim asserted.   *Hudson v. McMillian*, 503 U.S. 1, 8−9 (1992).   To satisfy the objective component, the degree of harm inflicted must be "sufficiently serious" to offend "contemporary standards of decency."   *Williams*, 631 F.3d at 383.

Ultimately, prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders.   *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599−601 (6th Cir. 1992).   Corrections officers do

not violate a prisoner's Eighth Amendment rights when they apply force "in a good-faith effort to maintain or restore discipline." *Jennings v. Mitchell*, 93 Fed.Appx. 723, 725 (6th Cir.2004). It is well-established that the use of tasers on recalcitrant prisoners does not violate the Eighth Amendment. *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a prisoner who was ordered to stop shouting and kicking but did not comply was not excessive force); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors.").

Ross asserts that while he was eating on March 8, 2021, a fight broke out, "far away from plaintiff," on the other side of the chow hall. (ECF No. 18, PageID.117.) He states that while the fight was being contained, Sgt. Miller came up behind him and intentionally tased him in the back. (*Id.*) Ross says the pain caused him to pass out. (*Id.*) Ross states that Miller did not allow a healthcare professional to evaluate his injuries. (*Id.*) Ross argues that Miller had no penological reason to tase him. (*Id.*)

In the supporting materials to his motion for summary judgment, Sgt. Miller provides video camera footage of the chow on March 8, 2021. (ECF No. 64.) The United States Supreme Court has held that "when opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court cautioned that where video evidence is available, courts should "view[] the facts in the light depicted by the videotape." *Id.* at 381. In the opinion of the undersigned, no reasonable jury could believe Ross's account of March 8, 2021 as it is blatantly contradicted by record.

In his affidavit, Miller says that on March 8, 2021, he was working in chow hall at URF, wearing a black mask over his mouth and nose. (ECF No. 62-4, PageID.415 (Miller Affidavit).) Miller states that in the chow hall surveillance footage, he can initially be seen stationed at the officer's desk, located in the top lefthand side of the video. (*Id.*) Miller says that Ross is the individual wearing a green jacket and orange knit cap in the bottom left of the surveillance footage. (*Id.*, PageID.416.) Shown below is a screenshot of the surveillance camera footage, including a yellow circle around Miller and a green circle around Ross:



(ECF No. 64 (Chow hall surveillance footage identifying Ross and Miller).)

When the footage commences, Ross is eating his meal at a table in the bottom left of the screen.   (*Id.* at 00:01.)   As the footage progresses, an inmate carries a tray of food from the far side of the chow hall, through the tables, and into the vicinity of Ross's table.   (*Id.* at 00:01 to 00:13.)   At 00:15, the inmate shoves his tray of food into the face of another inmate seated at the table directly to Ross's left.   (*Id.* at 00:15.)   Miller identifies inmates Jackson and Johnson as the fighting inmates. (ECF No. 62-4, PageID.416.)   Shown below is the moment the fight broke out between Jackson and Johnson, who are circled in red:



(ECF No. 64 at 00:15 (Screenshot showing the chow hall fight commence).)

As the fight progressed, Ross watched and remained seated with his meal. (*Id.* at 00:18.)   From the officer's desk, Miller noticed the fight and moved to contain it.   (*Id.*)   Other officers also moved to address the fight.   (*Id.*)   Shown below are officers' first movements, circled in orange, towards Jackson and Johnson:



(*Id.* at 00:18 (displaying COs moving to address the chow hall fight).)

The group of COs moved to address the fight to the left of Ross's table.   (*Id.* at 00:20.)   Ross remained seated and continued eating his meal.   (*Id.*)   Miller approached the fighting inmates and drew his taser.   (*Id.*)   Ross watched as the taser was drawn.   (*Id.*)   Miller deployed the taser, hitting Jackson in the back and shoulder.   (ECF No. 62-4, PageID.416.)   Jackson fell to the ground and Johnson continued to kick him in the face and upper torso.   (*Id.*)   Ross did not move from his seat.   (*Id.*)   Shown below is a screenshot of footage showing Miller as he deployed the taser for the first time:



(*Id.* at 00:20 (displaying Miller tase inmate Jackson).)

Within moments, Miller deployed his taser again.   (*Id.*)   Miller states that this time, he intended to tase inmate Johnson.   (ECF No. 62-4, PageID.416.)   Miller explains that his "sole basis for deploying the [taser] at the time of the incident was to stop prisoners Jackson and Johnson from actively fighting."   (*Id.*)   However, one of the taser probes struck Ross instead of Johnson.   (*Id.*; ECF No. 64 at 00:21.) Shown below is a screenshot of Miller deploying the taser towards inmate Johnson and striking Ross:



(*Id.* at 00:21 (showing Ross as he was struck by Miller's taser probe).)

Although Miller deployed his taser to hit inmate Johnson, the video footage suggests Johnson did not cease fighting until another CO tased him.    (*Id.* at 00:24.) As he was hit, Ross remained seated at his table.    (*Id.* at 00:21 to 00:36.)    Ross continued to sit upright and appeared to be alert, he did not slouch or pass out. (*Id.*)    Ross continued watching the COs work to subdue Jackson and Johnson while he spoke with his tablemate.    (*Id.*)    As COs handcuffed inmate Jackson, Ross informed them that he had been struck by a taser probe.    (*Id.*)    Shown below is the moment Ross informed nearby COs of the taser probe:



(*Id.* at 00:36 (showing Ross alert COs to the taser probe).)

As Miller worked with COs to prepare Jackson for transport, Ross continued to eat.  (*Id.* at 00:36 to 00:43.)  Ross licked his fingers, chatted with his tablemate, and communicated with COs about the taser probe as they worked with Jackson. (*Id.* at 00:43 to 1:00.)  Miller did not have contact with Ross while COs worked with Jackson.  (*Id.*)  Miller stood to Ross's left and held the taser still as other COs helped Jackson to his feet.  (*Id.*)  Newly arrived COs spoke with Ross, touching his shoulder and confirming where the probe was placed.  (*Id.* at 1:00 to 1:06.)  After confirming the location of the probe, Lieutenant Watson put on gloves and removed it.  (*Id.* at 1:31 to 1:34; ECF No. 62-3, PageID.412 (Critical Incident Participant Report by Brett Watson).)  Ross gave Watson a thumbs-up following the probe removal.  (*Id.* at 1:36.)  Jackson was helped to his feet and led away by a group of

COs and Miller followed the group out of the chow hall.   (*Id.* at 1:39.)   Ross did not walk to medical with Miller, Jackson, and Johnson.   (*Id.* at 1:51.)   Ross told CO Watson that he preferred to finish his dinner before he was seen by Health Services. (ECF No. 62-3, PageID.412.)   RN Hence assessed, cleaned, and dressed Ross's wound with a Band-Aid when he was seen by Health Services.   (*Id.*, PageID.410.)



(ECF No. 64 at 01:36 (Ross giving Watson a thumbs-up after he removed the taser probe).)

In the opinion of the undersigned, there remains no genuine issue of material fact as to whether Miller violated Ross's Eighth Amendment right to be free from excessive force.   Ross has presented no evidence that Miller acted maliciously or sadistically when he deployed his taser to stop the fight between Jackson and Johnson.   Nothing in the video depicts Ross in pain.   The video camera footage entirely contradicts Ross's telling of events.   The U.S. Supreme Court held that a

15

court should adopt the facts "in the light depicted by videotape" capturing the alleged excessive force.   *Scott*, 550 U.S. at 381.   The video shows that Ross was not sitting across the chow hall from Jackson and Johnson, rather, he was sitting at the table directly beside them as they fought.   The footage demonstrates that Miller did not approach Ross at his table before, during, or after the fight.   Ross did not pass out after he was tased, he remained sitting upright and continued to eat his meal after he was struck by the probe.   Finally, the footage confirms that Miller had a valid penological reason to deploy his taser – ceasing the fight between Jackson and Johnson.   Thus, there exists no genuine dispute of material fact which could support Ross's claim of excessive force.

### V.   Qualified Immunity

Sgt. Miller argues that he is entitled to dismissal of the complaint against him based upon qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was]

doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S. 73, 78 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must

be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id*., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.   *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

The Defendant's claim for qualified immunity is largely redundant.   The Defendant argues that because he did not violate Ross's constitutional rights he is entitled to qualified immunity.   In any event, the undersigned agrees; because there are no genuine issues of material fact and it is the undersigned's opinion that the Defendant did not violate Ross's Eighth Amendment rights, it is the undersigned's opinion that the Defendant is entitled to qualified immunity in his individual capacity. *See Phillips*, 534 F.3d at 538 ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting Harlow, 457 U.S. at 818)).

## VI.  Sovereign Immunity

The Defendant argues he is entitled to sovereign immunity on any of Ross's claims construed as official capacity claims.   (ECF No. 62, PageID.405.)   He stresses that at all times relevant to the complaint, he was an employee of the MDOC, and thus the state of Michigan.   (*Id.*)

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State.   *Brandon v. Holt*, 469 U.S. 464, 471 (1985).   The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.   *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978);

*O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, it is the undersigned's opinion that Ross's claims against Miller in his official capacity for monetary damages are properly dismissed in accordance with the Eleventh Amendment.

## VII.   State Law Claims

In his complaint, Ross asserted that violations of Michigan state law entitled him to damages. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Defendant Miller argues that although the "extent of Ross's state law claims against Sgt. Miller is unclear," the Court should decline to exercise supplemental jurisdiction over any potential state law claims because Sgt. Miller is entitled to

summary judgment on Ross's remaining Eighth Amendment excessive force claim. (ECF No. 62, PageID.385.)   If the Court adopts the undersigned's recommendation, it will dismiss all of Ross's federal law claims.   The balance of the relevant considerations would therefore weigh against the exercise of supplemental jurisdiction.   As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over Ross's state law claims.

## VIII.   Recommendation

It is respectfully recommended that the Court grant the Defendant's motion for summary judgment and dismiss the case in its entirety.

Dated:    May 12, 2025                    /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).